**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| PROXENSE, LLC,<br><br>              Plaintiff,<br><br>      v.<br><br>CISCO SYSTEMS, INC.<br><br>              Defendant. | Civil Action No. 2:26-cv-602<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT AGAINST**
**CISCO SYSTEMS, INC.**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 et seq., in which Plaintiff Proxense, LLC ("Proxense" or "Plaintiff") makes the following allegations against Defendant Cisco Systems, Inc. ("Defendant" or "Cisco"):

**INTRODUCTION**

1.      This action arises from Cisco's unauthorized making, using, selling, offering to sell, and importing of Wi-Fi 6, 6E, and 7 access points, wireless controllers, and related networking hardware that, when configured and used as Cisco instructs, practice one or more claims of Proxense's patents.

2.      Proxense is the owner of four United States patents: U.S. Patent Nos. 8,219,129 (the "'129 Patent"); 8,457,672 (the "'672 Patent"); 9,265,043 (the "'043 Patent"); and 8,036,152 (the "'152 Patent") (collectively, the "Asserted Patents" or the "Patents-in-Suit").

3.      The Asserted Patents disclose technical solutions to fundamental problems in high-density wireless networking. At a high level, the '129, '672, and '043 Patents (each entitled

1

"Dynamic Real-Time Tiered Client Access") claim systems and methods by which a network coordinates when and how multiple client devices exchange data, assigning specific time slots and sub-channels to client devices in a dynamic, real-time, tiered manner based on synchronization information and priority-level (Quality of Service) data. The '152 Patent claims apparatus and methods by which a wireless client device uses time-slot assignment information to set a timer, enter a power-conserving sleep mode, and awaken only when a scheduled data interaction is required, thereby conserving battery power. These inventions are foundational to, and practiced by, the Orthogonal Frequency Division Multiple Access ("OFDMA") and Target Wake Time ("TWT") features that the Wi-Fi 6 (IEEE 802.11ax) standard and its successors require.

4.       Proxense's inventors — including David Brown, a former lead engineer at Proxense and a key member of the team that brought XM satellite radio to market — foresaw, long before others, the need to coordinate large numbers of wireless clients efficiently and to manage their power consumption in dense wireless environments. They patented solutions for dynamically and tiedly allocating time slots and sub-channels according to device and user priority, and for scheduling client sleep and wake cycles around assigned time slots — the very techniques the industry later adopted as OFDMA and TWT.

5.       Cisco designs, develops, makes, uses, sells, offers to sell, and imports Wi-Fi 6, 6E, and 7 access points and wireless LAN controllers, including the Cisco Catalyst 9100 Series access points, the Cisco Wireless 9170 Series (Wi-Fi 7) access points, the Cisco Meraki cloud-managed access points, and the Cisco Catalyst 9800 Series Wireless Controllers — that incorporate OFDMA and TWT functionality. When configured and used as Cisco instructs, these products perform methods and use systems claimed in one or more of the Asserted Patents.

2

6.      Cisco markets these features aggressively. Cisco touts OFDMA-based scheduling for higher capacity, lower latency, and improved efficiency in dense client environments, promoting that OFDMA "improves wireless network performance," delivers "high throughput" by allowing "radio waves to carry more data in shorter timeframes," and provides "[l]ow latency" that "reduces response times and enhances performance for video, [artificial intelligence], and virtual- and augmented-reality applications."[1] Cisco further markets OFDMA as the solution to network congestion, representing that it "solves the congestion problem by accommodating multiple users at the same time and allocating bandwidth more efficiently" and "helps provide better service in high-density venues such as airports, lecture halls, and sports arenas."[2] Cisco likewise promotes Target Wake Time as reducing client device power consumption, describing TWT as "an energy-saving mode that allows battery-powered devices to stay asleep and wake only at predefined intervals for data exchange," thereby "reducing power consumption and improving battery life, particularly for IoT devices."[3] Cisco promotes these OFDMA and TWT capabilities as key differentiators of, and important to the value of, its Wi-Fi 6, 6E, and 7 platforms, listing "Uplink/downlink OFDMA" and "TWT" among the headline features of its Catalyst Wi-Fi 7 access points and marketing "enhanced Orthogonal Frequency-Division Multiple Access (OFDMA) . . . built to increase data transfer rates and connection performance," while representing that "[o]nly Cisco Wireless solutions can deliver the full scope of your wireless and networking needs."[4]

---

[1] *What is OFDMA?*, Cisco, https://www.cisco.com/site/us/en/learn/topics/networking/what-is-ofdma.html (last accessed July 22, 2026).

[2] *Id*.

[3] *What Is Wi-Fi 7? Explained*, Cisco, https://www.cisco.com/site/us/en/learn/topics/networking/what-is-wi-fi-7.html (last accessed July 22, 2026).

[4] *Wireless 9176 Series Access Points Data Sheet*, Cisco, https://www.cisco.com/c/en/us/products/collateral/wireless/catalyst-9100ax-access-points/wireless-9176-series-acc-point-ds.html (last accessed July 22, 2026); *Cisco Wireless Wi-Fi 7 Access Points At a Glance*, Cisco,

7.      Cisco has had knowledge of the Asserted Patents and its infringement at least since being served with this Complaint. Notwithstanding such notice, Cisco has continued, and on information and belief will continue, to make, use, sell, offer to sell, and import the accused products without a license from Proxense.

8.      Cisco directly infringes under 35 U.S.C. § 271(a); induces infringement under § 271(b) through its product documentation, deployment and configuration guides, software configuration guides, and end-user guidance; and contributes to infringement under § 271(c) by supplying access points, controllers, and firmware especially adapted for the infringing methods and systems and not suitable for substantial non-infringing uses when configured and used as Cisco instructs.

9.      By this action, Proxense seeks to protect its innovations, recover damages adequate to compensate for Cisco's infringement, secure enhanced damages for Cisco's willful misconduct, and obtain injunctive and equitable relief to prevent further unlawful exploitation of Proxense's intellectual property.

## THE PARTIES

10.     Plaintiff Proxense, LLC is a Delaware limited liability company with its principal place of business at 689 NW Stonepine Drive, Bend, Oregon 97703.

11.     Proxense develops, in part, secure, user-focused wireless systems related to efficient network access, client coordination, and device power management. Its inventors have worked in the fields of wireless communications, satellite radio, secure element and personal digital key ("PDK") technology, and biometric-based authentication. Proxense's foundational

---

https://www.cisco.com/c/en/us/products/collateral/wireless/catalyst-9100ax-access-points/wireless-wi-fi-7-access-points-aag.html (last accessed July 22, 2026)

4

patent portfolio was invented by a distinguished engineering team, including David Brown, a former lead engineer at Proxense and a key member of the team that brought XM satellite radio to market.

12.     Proxense is the owner by assignment of all rights, title, and interest in and to the Asserted Patents in this action, including the exclusive right to enforce, sue, and recover damages for past, present, and future infringements. These patents are duly and legally issued by the United States Patent and Trademark Office and are valid and enforceable.

13.     Through these patents, Proxense has invested significant resources in developing technologies used in modern wireless networking. Proxense continues to innovate and to enforce its intellectual property rights.

14.     Defendant Cisco Systems, Inc. is a Delaware corporation headquartered at 3098 Olsen Drive, San Jose, California 95128. Cisco has a regular and established place of business in this District at 2300 East President George Bush Highway, Richardson, TX 75082. Cisco may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701.

15.     Cisco is one of the largest networking-equipment companies in the world. Cisco designs, develops, makes, uses, sells, offers to sell, and imports wireless networking products — including Wi-Fi 6, 6E, and 7 access points and wireless LAN controllers — that are deployed globally in consumer, enterprise, education, healthcare, and government networks.

**JURISDICTION AND VENUE**

16.     This action arises under the patent laws of the United States, 35 U.S.C. § 101, et seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question

jurisdiction) and 1338(a) (jurisdiction over patent actions) because this action arises under the patent laws of the United States.

17.    This Court has personal jurisdiction over Cisco because, among other things, Cisco does business in this State by, among other things, "recruit[ing] Texas residents, directly or through an intermediary located in this State, for employment inside or outside this state." Tex. Civ. Prac. & Rem. Code § 17.042(3). For instance, Cisco maintains numerous job openings in Texas.[5]



---

[5] https://careers.cisco.com/global/en/search-results?from=10&s=1 (last accessed July 22, 2026); https://www.linkedin.com/jobs/search/?currentJobId=4434038833&f_C=1063%2C92950%2C3517498%2C3805%2C72566046%2C2792574%2C687352%2C11434&geoId=102748797&origin=JOB_SEARCH_PAGE_LOCATION_AUTOCOMPLETE&refresh=true (last accessed July 22, 2026).



18.    Further, according to its LinkedIn account, Cisco employs over 810 people in Richardson, Frisco, and Plano, Texas, all within this District.[6]



---

[6] https://www.linkedin.com/company/cisco/people/?facetGeoRegion=102164100%2C100517351%2C105918502
(last accessed July 22, 2026)

19.    Further still, this Court has personal jurisdiction over Cisco because Cisco has engaged, and continues to engage, in continuous, systematic, and substantial activities within this State, including the substantial marketing and sale of products and services within this State and this District. Cisco has committed acts giving rise to Proxense's claims for patent infringement within and directed to this District, has derived substantial revenue from its products and services provided to individuals and entities in this State and this District, and maintains regular and established places of business in this District, including at least its brick-and-mortar location in Richardson.[7]



<hr>

[7] https://www.cisco.com/site/us/en/about/contact-cisco/office-locations.html (last accessed July 22, 2026)

20. Additionally, according to the Collin County Central Appraisal District website, Cisco owns another location in this District at 2260 Chelsea Blvd, Allen, Texas 75013.[8]



21. On information and belief, Cisco's Texas-based employees regularly enter this district to conduct business. For example, on July 21, 2026, a day before the filing of this complaint, Bryan Sinclair, Vice President, Legal & Deputy General Counsel, IP Litigation at Cisco, traveled to the district to voluntarily testify (e.g., without a subpoena) at a hearing before Judge Payne. Mr. Sinclair did so to assist Cisco's business partner, Amazon, in its defense in another patent litigation. Cisco was not even a party to the action.

22. Relative to patent infringement, Cisco has committed and continues to commit acts in violation of 35 U.S.C. § 271, including making, using, selling, offering to sell, and importing, and inducing and contributing to others' use of, infringing products, systems, and/or services in

---

[8] https://esearch.collincad.org/ (last accessed July 22, 2026)

this State, including this District, and otherwise engaging in infringing conduct within and directed at, or from, this District. Such products, systems, and/or services (collectively, the "Accused Instrumentalities") include Cisco's Wi-Fi 6, 6E, and 7 access points and wireless controllers — including without limitation the Cisco Catalyst 9100 Series access points (e.g., the Catalyst 9105, 9115, 9120, 9124, 9130, 9136, 9162, 9163E, 9164, and 9166), the Cisco Wireless 9172, 9176, and 9178 Series Wi-Fi 7 access points, the Cisco Meraki cloud-managed access points (e.g., the MR-Series and the CW9162, CW9164, CW9166, CW9172, CW9176, and CW9178), and the Cisco Catalyst 9800 Series Wireless Controllers that configure and manage them — and any other Cisco product or service that implements Wi-Fi 6 (IEEE 802.11ax) or later OFDMA and/or Target Wake Time functionality.

23.    Cisco's infringing activities have caused harm to Proxense in this District. Cisco and/or its partners distribute the Accused Instrumentalities within this District, and on information and belief, Cisco, its partners, and/or their customers use the Accused Instrumentalities in this District in an infringing manner. Cisco's products are distributed through Cisco's website, resellers, and channel partners, and are deployed by enterprises, educational institutions, healthcare providers, and government agencies throughout this District. Each such use constitutes an act of direct infringement within this District.

24.    Cisco also induces and contributes to infringement in this District by publishing and distributing data sheets, deployment guides, software configuration guides, and other technical documentation that encourage and instruct its partners, customers, and end users in this District to deploy, configure, and operate the Accused Instrumentalities — including their OFDMA and Target Wake Time functionality — in configurations that practice one or more claims of the Asserted Patents.

11

25.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Cisco maintains regular and established places of business in this District, including at least its locations in Richardson and Allen, Texas, employs individuals here, and has committed and continues to commit acts of infringement in this District. As set out above, Cisco has at least distributed and used the Accused Instrumentalities in an infringing manner in this District, and Cisco's customers and end users have used and continue to use the Accused Instrumentalities in an infringing manner in this District, induced by Cisco. This renders this District both a proper and convenient forum for this action.

## BACKGROUND

### PROXENSE'S INVENTIONS AND CISCO'S USE OF
### THE PATENTED TECHNOLOGY

26.     The Asserted Patents claim specific, non-abstract technological improvements to wireless communication systems. Each patent recites particular sequences of operations for coordinating wireless client access and managing client power consumption using time-slot assignment, synchronization information, priority-level data, and timers. These claims are rooted in wireless-network technology, address problems arising specifically in dense wireless environments, and provide concrete improvements in network efficiency, throughput, latency, and device battery life.

27.     Proxense was founded, in part, to develop improved approaches to wireless communication and device coordination at a time when wireless networks struggled to serve growing numbers of client devices efficiently. Proxense's inventors conceived of systems in which a network wirelessly broadcasts synchronization information to client devices — including individualized masks applied to bit fields of individual client devices — so that time slots are

12

assigned to those devices dynamically and in a tiered manner, according to priority. Proxense's inventors further conceived of using such time-slot assignment information to schedule when a client device's transceiver would sleep to conserve power and wake to exchange data.

28. Proxense's patented inventions provided detailed, technical solutions to challenges that had stymied the industry. The '129, '672, and '043 Patents disclose how a network coordinates client devices to exchange data during particular time slots determined by the network, where synchronization information containing individualized masks applied to the client devices' bit fields is used to determine those time slots, allowing client devices to communicate in a dynamic, real-time, tiered manner based on priority. The '152 Patent discloses how, because time slots can be predicted or are known, a client device may set a timer, enter a sleep mode, and later awaken when a specific, time-slotted data interaction is required, so that battery power that would otherwise be consumed if the client device were active outside of the time slot may be saved.

29. These technical solutions were recognized by the United States Patent and Trademark Office, which, after examination, issued the Asserted Patents to Proxense. The issued claims reflect not abstract ideas but concrete engineering solutions designed to improve the efficiency, capacity, and power management of wireless networks, and were years ahead of their time.

30. Years after Proxense's inventions, the wireless industry adopted the same techniques as mandatory features of the Wi-Fi 6 (IEEE 802.11ax) standard and its successors. Wi-Fi 6 introduced, and requires for compliance, OFDMA, which divides a wireless channel into sub-carriers (Resource Units) and the transmission window into time slots, and assigns client devices to Resource Units and time slots based on bandwidth needs and Quality of Service categories — practicing the tiered, priority-based time-slot allocation claimed by the '129, '672, and '043

Patents. Wi-Fi 6 also introduced, and requires for compliance, Target Wake Time, which schedules specific times for individual client stations to wake to exchange frames and otherwise sleep to conserve power — practicing the apparatus and methods claimed by the '152 Patent.

31.     Proxense has a proven track record of licensing and enforcing its foundational portfolio of approximately 90 patents, which include both wireless and authentication-related patents. Google, Samsung, and Intel Corporation have each resolved their respective disputes with Proxense. The '129, '672, and '043 Patents have withstood inter partes review challenges, and the validity of the foundational '152 Patent has not been challenged in inter partes or ex parte review.

32.     Cisco is a leading maker and seller of enterprise Wi-Fi infrastructure. Cisco designs, makes, uses, sells, offers to sell, and imports Wi-Fi 6, 6E, and 7 access points and wireless LAN controllers — including the Catalyst 9100 Series, the Cisco Wireless 9170 Series, the Meraki CW- and MR-Series access points, and the Catalyst 9800 Series Wireless Controllers — that implement OFDMA and TWT. Cisco's own product documentation confirms that its accused products implement these features. *See, e.g.*, **"OFDMA Support for 11ax Access Points"** — *Cisco Catalyst 9800 Series Wireless Controller Software Configuration Guide, Cisco IOS XE 17.9.x*:

https://www.cisco.com/c/en/us/td/docs/wireless/controller/9800/17-9/config-guide/b_wl_17_9_cg/m_ofdma_11ax.html; **"Target Wake Time"** — *id.* (same guide, IOS XE 17.9.x):

https://www.cisco.com/c/en/us/td/docs/wireless/controller/9800/17-9/config-guide/b_wl_17_9_cg/m_twt_support_axel.htm; **Cisco Catalyst 9100 and Wi-Fi 6/6E (802.11ax) FAQ:**

14

https://www.cisco.com/c/en/us/products/collateral/wireless/catalyst-9100ax-access-points/nb-06-802-11ax-faq-cte-en.html.

33.     Cisco highlighted these features as important capabilities in its marketing, touting OFDMA-based efficiency, capacity, and latency improvements and Target Wake Time power savings as defining features of its Wi-Fi 6, 6E, and 7 platforms. On information and belief, Cisco used these features — first conceived and patented by Proxense — to win customers and maintain its position in the enterprise wireless market.

34.     Cisco's infringement has caused substantial harm to Proxense. By using Proxense's patented inventions without a license, Cisco has deprived Proxense of fair licensing revenue and eroded the value of Proxense's patent portfolio. Comparable wireless technologies are typically licensed on a per-unit or percentage-of-revenue basis in the networking industry. Cisco's unauthorized use of these features has deprived Proxense of fair market compensation and has conferred upon Cisco an unjust competitive advantage.

35.     Cisco's infringement is ongoing and pervasive. Cisco has sold and deployed large numbers of Wi-Fi 6, 6E, and 7 access points and wireless controllers incorporating OFDMA and TWT, which are deployed in enterprises, schools, hospitals, and government agencies, including extensively in this District. Each of these deployments represents the unauthorized practice of Proxense's patented technologies.

## THE ASSERTED PATENTS

36.     Proxense is the owner, by assignment, of all rights, title, and interest in and to the Asserted Patents. Each of the Asserted Patents was duly and legally issued by the USPTO, and

each remains valid and enforceable. True and correct copies of the Asserted Patents are attached hereto as **Exhibits 1 to 4**.

37.     U.S. Patent No. 8,219,129 (the '129 Patent), entitled "Dynamic Real-Time Tiered Client Access," was duly issued by the USPTO on July 10, 2012. A true and correct copy of the '129 Patent is attached hereto as **Exhibit 1**.

38.     The '129 Patent addresses the problem of efficiently coordinating data exchange among many wireless client devices. It discloses and claims methods in which a network wirelessly broadcasts synchronization information — including individualized masks to be applied to bit fields of individual client devices — and assigns specific time slots to client devices to communicate with a fixed proximity-based reader device, where the time slots are set according to priority-level (class) data associated with the client device and/or its user, thereby coordinating client devices in a dynamic, real-time, tiered manner.

39.     Cisco's Wi-Fi 6, 6E, and 7 access points and wireless controllers implementing OFDMA practice the claims of the '129 Patent, as detailed in the exemplary claim chart attached hereto as **Exhibit 5**.

40.     U.S. Patent No. 8,457,672 (the '672 Patent), entitled "Dynamic Real-Time Tiered Client Access," was duly issued by the USPTO on June 4, 2013. A true and correct copy of the '672 Patent is attached hereto as **Exhibit 2**.

41.     The '672 Patent discloses and claims methods of facilitating data exchange in which a first specified time slot is determined based on synchronization information wirelessly received by a client device and priority-level data associated with a class, the time slot is assigned to a first client device, and the time slot is reassigned to a second client device based on

16

synchronization information and priority-level data associated with a second class — practicing the dynamic, tiered, priority-based scheduling performed by Cisco's OFDMA-enabled access points, as detailed in the exemplary claim chart attached hereto as **Exhibit 6**.

42.     U.S. Patent No. 9,265,043 (the '043 Patent), entitled "Dynamic Real-Time Tiered Client Access," was duly issued by the USPTO on February 16, 2016. A true and correct copy of the '043 Patent is attached hereto as **Exhibit 3**.

43.     The '043 Patent discloses and claims methods of facilitating wireless data exchange between a portable client device and a fixed-location proximity reader, in which a first time slot is determined and assigned based on synchronization information and priority-level (class) data, a change in network traffic is determined, and the first time slot is unassigned responsive to that change based on the priority-level data — practicing the traffic-responsive, priority-based OFDMA scheduling performed by Cisco's access points, as detailed in the exemplary claim chart attached hereto as **Exhibit 7**.

44.     U.S. Patent No. 8,036,152 (the '152 Patent), entitled "Integrated Power Management of a Client Device via System Time Slot Assignment," was duly issued by the USPTO on October 11, 2011. A true and correct copy of the '152 Patent is attached hereto as **Exhibit 4**.

45.     The '152 Patent addresses the problem of conserving battery power in wireless client devices. It discloses and claims apparatus and methods in which, because time slots can be predicted or are known, a wireless transceiver (having an active mode and a sleep mode) uses time-slot assignment information to set a timer, enters a sleep mode, and later awakens at the beginning of the assigned time slot to exchange data, and monitors a channel for a beacon and, if none is detected, increases the channel number and resets the timer — practicing the Target Wake Time

17

functionality of Cisco's Wi-Fi 6, 6E, and 7 access points and the client devices they schedule, as detailed in the exemplary claim chart attached hereto as **Exhibit 8**.

46.     The claims of the Asserted Patents are directed to patent-eligible subject matter under 35 U.S.C. § 101. They are not directed to abstract ideas, and the technologies covered by the claims consist of ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

## COUNT I

### INFRINGEMENT OF U.S. PATENT NO. 8,219,129

47.     Proxense realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

48.     On July 10, 2012, the United States Patent and Trademark Office duly and legally issued the '129 Patent. A true and correct copy is attached hereto as **Exhibit 1**.

49.     The technology disclosed in the '129 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the '129 Patent.

*Direct Infringement (35 U.S.C. § 271(a))*

50.     Cisco has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '129 Patent, including at least claims 1 and 16, by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities. Such infringing acts have occurred and continue to occur in the United States, including within this District, through Cisco's internal use, testing, validation, and demonstration of the accused products, as well as through Cisco's inducement of partner and end-user operation.

51.    An exemplary claim chart mapping claims 1 and 16 to representative Accused Instrumentalities is attached hereto as **Exhibit 5**. Cisco uses the Accused Instrumentalities for itself and also deploys and configures the Accused Instrumentalities to establish and operate Wi-Fi 6, 6E, and 7 wireless networks for its customers, partners, and end users, in each case in a manner that practices the claimed inventions.

*Induced Infringement (35 U.S.C. § 271(b))*

52.    Cisco has induced and continues to induce infringement of the '129 Patent by knowingly and intentionally encouraging and instructing its customers, partners, and end users to deploy, configure, and operate the Accused Instrumentalities — including their OFDMA and/or Target Wake Time functionality — in infringing ways. For example, Cisco's data sheets, deployment guides, and software configuration guides provide step-by-step instructions that, when followed, necessarily perform each step of the claimed methods. Despite its knowledge of the '129 Patent and its scope, Cisco specifically intends for such persons to use the Accused Instrumentalities in infringing ways, and knew or should have known that its actions have induced, and continue to induce, such infringement.

*Contributory Infringement (35 U.S.C. § 271(c))*

53.    Cisco has contributed and continues to contribute to infringement of the '129 Patent by supplying access points, wireless controllers, and firmware that constitute a material part of the claimed inventions, that Cisco knows are especially made or adapted to implement the standard-mandated OFDMA and/or Target Wake Time functionality in a manner that practices the claims, and that are not staple articles of commerce suitable for substantial non-infringing use when configured and used as Cisco instructs.

## COUNT II

### INFRINGEMENT OF U.S. PATENT NO. 8,457,672

54.    Proxense realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

55.    On June 4, 2013, the United States Patent and Trademark Office duly and legally issued the '672 Patent. A true and correct copy is attached hereto as **Exhibit 2**.

56.    The technology disclosed in the '672 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the '672 Patent.

*Direct Infringement (35 U.S.C. § 271(a))*

57.    Cisco has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '672 Patent, including at least claim 1, by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities. Such infringing acts have occurred and continue to occur in the United States, including within this District, through Cisco's internal use, testing, validation, and demonstration of the accused products, as well as through Cisco's inducement of partner and end-user operation.

58.    An exemplary claim chart mapping claim 1 to representative Accused Instrumentalities is attached hereto as **Exhibit 6**. Cisco uses the Accused Instrumentalities for itself and also deploys and configures the Accused Instrumentalities to establish and operate Wi-Fi 6, 6E, and 7 wireless networks for its customers, partners, and end users, in each case in a manner that practices the claimed inventions.

*Induced Infringement (35 U.S.C. § 271(b))*

59.     Cisco has induced and continues to induce infringement of the '672 Patent by knowingly and intentionally encouraging and instructing its customers, partners, and end users to deploy, configure, and operate the Accused Instrumentalities — including their OFDMA and/or Target Wake Time functionality — in infringing ways. For example, Cisco's data sheets, deployment guides, and software configuration guides provide step-by-step instructions that, when followed, necessarily perform each step of the claimed methods. Despite its knowledge of the '672 Patent and its scope, Cisco specifically intends for such persons to use the Accused Instrumentalities in infringing ways, and knew or should have known that its actions have induced, and continue to induce, such infringement.

*Contributory Infringement (35 U.S.C. § 271(c))*

60.     Cisco has contributed and continues to contribute to infringement of the '672 Patent by supplying access points, wireless controllers, and firmware that constitute a material part of the claimed inventions, that Cisco knows are especially made or adapted to implement the standard-mandated OFDMA and/or Target Wake Time functionality in a manner that practices the claims, and that are not staple articles of commerce suitable for substantial non-infringing use when configured and used as Cisco instructs.

## COUNT III

### INFRINGEMENT OF U.S. PATENT NO. 9,265,043

61.     Proxense realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

62.     On February 16, 2016, the United States Patent and Trademark Office duly and legally issued the '043 Patent. A true and correct copy is attached hereto as **Exhibit 3**.

63.     The technology disclosed in the '043 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the '043 Patent.

***Direct Infringement (35 U.S.C. § 271(a))***

64.     Cisco has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '043 Patent, including at least claim 1, by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities. Such infringing acts have occurred and continue to occur in the United States, including within this District, through Cisco's internal use, testing, validation, and demonstration of the accused products, as well as through Cisco's inducement of partner and end-user operation.

65.     An exemplary claim chart mapping claim 1 to representative Accused Instrumentalities is attached hereto as **Exhibit 7**. Cisco uses the Accused Instrumentalities for itself and also deploys and configures the Accused Instrumentalities to establish and operate Wi-Fi 6, 6E, and 7 wireless networks for its customers, partners, and end users, in each case in a manner that practices the claimed inventions.

***Induced Infringement (35 U.S.C. § 271(b))***

66.     Cisco has induced and continues to induce infringement of the '043 Patent by knowingly and intentionally encouraging and instructing its customers, partners, and end users to deploy, configure, and operate the Accused Instrumentalities — including their OFDMA and/or Target Wake Time functionality — in infringing ways. For example, Cisco's data sheets,

deployment guides, and software configuration guides provide step-by-step instructions that, when followed, necessarily perform each step of the claimed methods. Despite its knowledge of the '043 Patent and its scope, Cisco specifically intends for such persons to use the Accused Instrumentalities in infringing ways, and knew or should have known that its actions have induced, and continue to induce, such infringement.

*Contributory Infringement (35 U.S.C. § 271(c))*

67.     Cisco has contributed and continues to contribute to infringement of the '043 Patent by supplying access points, wireless controllers, and firmware that constitute a material part of the claimed inventions, that Cisco knows are especially made or adapted to implement the standard-mandated OFDMA and/or Target Wake Time functionality in a manner that practices the claims, and that are not staple articles of commerce suitable for substantial non-infringing use when configured and used as Cisco instructs.

## COUNT IV

### INFRINGEMENT OF U.S. PATENT NO. 8,036,152

68.     Proxense realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

69.     On October 11, 2011, the United States Patent and Trademark Office duly and legally issued the '152 Patent. A true and correct copy is attached hereto as **Exhibit 4**.

70.     The technology disclosed in the '152 Patent was not routine or conventional. The USPTO examined the claimed technology and determined that no prior art, alone or in combination, disclosed or rendered obvious the claims of the '152 Patent.

*Direct Infringement (35 U.S.C. § 271(a))*

71.    Cisco has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '152 Patent, including at least claims 1 and 7, by making, using, offering to sell, selling, and/or importing the Accused Instrumentalities. Such infringing acts have occurred and continue to occur in the United States, including within this District, through Cisco's internal use, testing, validation, and demonstration of the accused products, as well as through Cisco's inducement of partner and end-user operation.

72.    An exemplary claim chart mapping claims 1 and 7 to representative Accused Instrumentalities is attached hereto as Exhibit 8. Cisco uses the Accused Instrumentalities for itself and also deploys and configures the Accused Instrumentalities to establish and operate Wi-Fi 6, 6E, and 7 wireless networks for its customers, partners, and end users, in each case in a manner that practices the claimed inventions.

*Induced Infringement (35 U.S.C. § 271(b))*

73.    Cisco has induced and continues to induce infringement of the '152 Patent by knowingly and intentionally encouraging and instructing its customers, partners, and end users to deploy, configure, and operate the Accused Instrumentalities — including their OFDMA and/or Target Wake Time functionality — in infringing ways. For example, Cisco's data sheets, deployment guides, and software configuration guides provide step-by-step instructions that, when followed, necessarily perform each step of the claimed methods. Despite its knowledge of the '152 Patent and its scope, Cisco specifically intends for such persons to use the Accused Instrumentalities in infringing ways, and knew or should have known that its actions have induced, and continue to induce, such infringement.

*Contributory Infringement (35 U.S.C. § 271(c))*

74.    Cisco has contributed and continues to contribute to infringement of the '152 Patent by supplying access points, wireless controllers, and firmware that constitute a material part of the claimed inventions, that Cisco knows are especially made or adapted to implement the standard-mandated OFDMA and/or Target Wake Time functionality in a manner that practices the claims, and that are not staple articles of commerce suitable for substantial non-infringing use when configured and used as Cisco instructs.

## PRAYER FOR RELIEF

WHEREFORE, Proxense respectfully requests that this Court enter judgment in its favor and grant the following relief:

a.    That the Court adjudge and declare that Cisco has infringed, literally and/or under the doctrine of equivalents, one or more valid and enforceable claims of each of the Asserted Patents, including U.S. Patent Nos. 8,219,129; 8,457,672; 9,265,043; and 8,036,152;

b.    That the Court adjudge and declare that Cisco's acts of infringement have been and continue to be willful, deliberate, and in conscious disregard of Proxense's patent rights;

c.    A permanent injunction prohibiting Cisco from further acts of infringement of the Asserted Patents, or, in the alternative, an award of ongoing royalties for Cisco's continuing infringement;

d.    A judgment and order requiring Cisco to pay Proxense its damages, costs, expenses, and pre-judgment and post-judgment interest for Cisco's infringement of the Asserted Patents;

e.    That Proxense is entitled to damages adequate to compensate for Cisco's infringement, but in no event less than a reasonable royalty;

f.    A judgment and order requiring Cisco to provide an accounting and to pay supplemental damages to Proxense, including any continuing, post-verdict infringement, together with pre-judgment and post-judgment interest;

h.    A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Proxense its reasonable attorneys' fees against Cisco; and

i.    Any and all other relief as the Court may deem appropriate and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

Proxense, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: July 22, 2026

*/s/ David L. Hecht*
David L. Hecht (Texas Bar No. 24136516)
HECHT PARTNERS LLP
111 Congress Avenue, Suite 500
Austin, TX 78701
Tel: 212-851-6821
E: dhecht@hechtpartners.com

*Counsel for Plaintiff Proxense, LLC*

26